| | |
|---|---|
| D.R. HORTON, INC., ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| vs. ) | |
| ) | Civil Action No. \_\_\_\_\_ |
| EDWARDS PLACE DEVELOPMENT, ) | |
| LLC; DAVID CAMPBELL, ) | |
| INDIVIDUALLY AND AS TRUSTEE FOR ) | |
| MR LLC TRUST; MR LLC TRUST; ) | |
| SCOTT THOMPSON; and PEOPLES ) | |
| BANK OF THE SOUTH, ) | |
| ) | |
| **Defendants.** | |

## COMPLAINT

Plaintiff D.R. Horton (hereinafter "Horton"), by and through counsel, files this Complaint for the herein stated causes of action against Edwards Place Development, LLC (hereinafter "Edwards Place"), David Campbell, MR LLC Trust, Scott Thompson and Peoples Bank of the South, (hereinafter "Peoples Bank") and in support thereof would show the following:

### The Parties

1. D.R. Horton is incorporated in the state of Delaware with its principal office in Arlington, Texas.

2. Edwards Place Development, LLC is a Tennessee limited liability corporation.

3. David Campbell is a resident of Knox County, Tennessee.

4. MR LLC Trust was created in Tennessee with the purpose of managing Edwards Place Development, LLC. David Campbell is the trustee of MR LLC Trust.

5. Peoples Bank of the South is a bank charted by the state of Tennessee.

6. Scott Thompson is the Senior Vice President of Commercial Lending for Peoples Bank of the South's Scott County, Tennessee office.

## Subject Matter Jurisdiction

7. The Court possesses subject matter jurisdiction over the claims in the Complaint pursuant to 28 U.S.C. 1332(1)(a) .

8. Plaintiff D. R. Horton is a citizen of the states of Texas and Delaware.

9. Defendant Edwards Place Development, LLC is a citizen of State of Tennessee.

10. Defendant David Campbell is a citizen of the State of Tennessee.

11. Defendant MR LLC Trust is a citizen of the State of Tennessee.

12. Defendant Scott Thompson is a citizen of the State of Tennessee.

13. Defendant Peoples Bank of the South is a citizen of the State of Tennessee.

14. As set forth herein, the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs.

## Facts

15. Edwards Place, managed by MR LLC Trust, owned a large acreage of undeveloped, raw land in Corryton, Knox County, Tennessee.

16. Edwards Place began developing the land and selling developed, empty lots to homebuilders. D.R. Horton is one of those homebuilders.

17. The development in Corryton, Tennessee is known as Edwards Place Subdivision (the "Subdivision").

18. Peoples Bank provided Edwards Place with a loan which was secured by the property owned by Edwards Place in the Subdivision. Peoples Bank recorded a number of deeds of trust securing its interest in the property.

19. Scott Thompson, Senior Vice President of Commercial Lending for Peoples Bank, is the loan officer responsible for the Edwards Place loan.

20. David Campbell, the trustee of the MR LLC Trust which manages Edwards Place, is a civil engineer and the engineer of record for the Subdivision. David Campbell is regularly at the Subdivision and provides status updates to D.R. Horton on the development of the lots.

21. Michael Rhodes is the beneficiary of MR LLC Trust and a member of Edwards Place. Michael Rhodes filed for relief under Chapter 7 of the U.S. Bankruptcy Code on September 20, 2018, Case No. 3:18-bk-32908, and is not a party to the lawsuit.

22. Doug Clifton of Clifton Construction, is a third-party contractor who works on the Subdivision on behalf of Edwards Place. Doug Clifton is regularly at the Subdivision.

23. On or around January 18, 2017, D.R. Horton and Edwards Place entered into a Lot Purchase Agreement[1] whereby Edwards Place would develop certain lots in the Subdivision and thereafter sell the lots to D.R. Horton for the purpose of building residential houses on the lots for resale. Exhibit A.

24. David Campbell signed the Lot Purchase Agreement on behalf of Edwards Place.

---

[1] On or around July 18, 2017, D.R. Horton and Edwards Place amended the Lot Purchase Agreement, changing the number of lots to be purchased and a few other terms. The amended Lot Purchase Agreement maintained all terms of the original Agreement not specifically altered by the amendment. The amendment to the Lot Purchase Agreement did not affect any of the terms relevant to this matter, only that lots affected by the herein alleged breaches were added as part of the "Property." The Lot Purchase Agreement and its amendment are together referenced herein as the Lot Purchase Agreement and are attached as Exhibit A.

25. The Lot Purchase Agreement calls for Edwards Place to develop and sell to D.R. Horton one hundred thirty-six (136) lots in the Subdivision.

26. The Lot Purchase Agreement includes a closing schedule setting closing dates for phases of lots until all 136 lots are developed and sold to D.R. Horton.

27. Additional relevant Subsections of the Lot Purchase Agreement include:

12. **Development Specifications.** …Seller warrants that:

a. **The following Subdivision improvements as to all Lots being purchased by the Buyer have been or will be completed by Seller prior to the Initial Closing:** (i) clearing; (ii) grading; (iii) curbing; (iv) paving, including paving of all roads and parking areas, whether public or private; (v) storm drainage, retention and detention facilities and other storm drainage systems, including payment of all off-site fees and charges with respect thereto, if any; **(vi) sanitary sewer**; (vii) public water source and distribution system with adequate capacity to serve a single-family dwelling unit on each Lot; (viii) street signs consistent with the signs installed in previous phases of the Subdivision; and (ix) sidewalks abutting the common space areas of the Subdivision, in accordance with the Subdivision Plans. Buyer shall be responsible for installing sidewalks on Lots purchased by Buyer as shown on the final plat. (Emphasis added)

j. All **utilities** servicing the Lots, including water and sewer lines are operable and have received the appropriate certifications and clearances from the applicable utilities and agencies. (Emphasis added)

k. All Subdivision improvements have been completed or bonded in accordance with the Subdivision Plans so that building permits and certificates of occupancy are available without condition.

25. **Seller's Warranties.** Seller represents, warrants and covenants to Buyer, as of the Effective Date, continuing through each closing that:

q. The Lots will be usable as Lots upon which a single family residence can be constructed and used for residential purposes without extraordinary expense for footings, foundation, or slab installation, or for sewer, water or septic line installation.

u. The Lots have been developed in accordance with the Development Specifications.

28. On or around April 10, 2017, D.R. Horton purchased approximately fifteen (15) lots from Edwards Place in the Subdivision, in accordance with the Lot Purchase Agreement.

29. On or around September 14, 2017, D.R. Horton purchased approximately six (6) lots from Edwards Place in the Subdivision, in accordance with the Lot Purchase Agreement.

30. Each time D.R. Horton purchased lots from Edwards Place, a majority of the consideration was used as a loan payoff to Peoples Bank. Peoples Bank would then release its lien on those particular lots.

31. Operable sewer and electrical capacity were provided to the lots acquired at the first two closings as required by the Lot Purchase Agreement.

32. A third closing for approximately twenty-five (25) lots in the Subdivision (the "Lots") was scheduled, according to the closing schedule in the Lot Purchase Agreement, for October 15, 2017.

33. The closing was delayed several months because the Lots were not developed by Edwards Place on time.

34. At some point, Scott Thompson took over management of the development of the Subdivision, directly communicating with D.R. Horton as a purchaser of lots in the Subdivision, and directly communicating with third party contractors working on the Subdivision.

35. On or around June 12, 2018, Michael Rhodes and David Campbell of Edwards Place, Doug Clifton of Clifton Construction, and Scott Thompson of Peoples Bank met with D.R. Horton's Andy Oxley, John Caprio, and Ean Moffett. The purpose of the meeting was to discuss the upcoming third closing.

36. At the meeting, Michael Rhodes, David Campbell, Doug Clifton and Scott Thompson sought assurances that D.R. Horton was prepared to close on the next phase of the

5

Case 3:18-cv-00456-JRG-HBG   Document 1   Filed 10/19/18   Page 5 of 15   PageID #: 5

Subdivision and D.R. Horton stated that it was ready to close once the lots were developed in accordance with the Lot Purchase Agreement.

37. At the meeting, Michael Rhodes, David Campbell, Doug Clifton and Scott Thompson represented that the Lots were ready to close.

38. Initially, the parties were unable to close on the third phase of lots because Edwards Place could not provide clear title to the Lots. Upon information and belief, this was because Edwards Place was not in good standing with the Tennessee Secretary of State due to unpaid taxes.

39. On July 9, 2018, Scott Thompson called D.R. Horton's Andy Oxley irately demanding that the closing occur immediately. Mr. Oxley responded that Edwards Place was holding up the closing due to an issue with the Secretary of State's office. Scott Thompson, in vulgar and unprofessional language, continued to demand that the closing occur immediately. Scott Thompson's demeanor when communicating with a purchaser of land was unusual for an officer of a bank merely holding a lien on said property.

40. On or around July 18, 2018, D.R. Horton and Edwards Place closed on the Lots.

41. Approximately two weeks later, Doug Clifton told D.R. Horton that the Lots did not have operable sewer and that Edwards Place, Michael Rhodes, David Campbell, and Scott Thompson were aware, before and during the closing of the Lots, that the Lots did not have operable sewer.

42. Thereafter, via a telephone call with D.R. Horton, David Campbell, Michael Rhodes, and Doug Clifton acknowledged that the Lots did not have operable sewer, that Edwards Place did not have the money to complete the Lots in accordance with the Lot Purchase Agreement and that Peoples Bank and Scott Thompson would not loan additional money to complete the development of the Lots.

43. On August 10, 2018, D.R. Horton representatives John Caprio, Ean Moffett, and Barak Saltzman participated in a telephone conference with David Campbell during which Campbell stated, "the Bank told me to keep my mouth shut," about the sewer so that the closing could occur.

44. Upon information and belief, Peoples Bank and Scott Thompson knew that the Lots were not developed in accordance with the Lot Purchase Agreement at the time of the June 12, 2018, meeting, the July 9, 2018, telephone call, and at the time of closing on July 18, 2018.

45. In September 2018, D.R. Horton became aware that the Lots also lacked electrical capacity, a requirement of the Lot Purchase Agreement.

46. D.R. Horton cannot complete and sell residential houses without operable sewer and electrical capacity.

47. D.R. Horton has attempted to mitigate its damages by seeking to negotiate a solution with Edwards Place that will allow D.R. to begin further development on the Lots.

48. D.R. Horton has offered the following: (1) creating an easement through lots still owned by Edwards Place that are due to be sold to D.R. Horton under the Lot Purchase Agreement, so that D.R. Horton can build a pumping station and sewer infrastructure that will be satisfactory to homebuyers, or (2) acquiring the remainder of the raw, undeveloped property from Edwards Place, pursuant to the Lot Purchase Agreement, and developing the remaining lots itself.

49. Scott Thompson and Peoples Bank, exerting control over Edwards Place, attempted to negotiate with D.R. Horton the sale of the remaining lots in the Subdivision by offering a purchase price well above market value on the raw undeveloped lots remaining in the Subdivision.

50. Michael Rhodes informed D.R. Horton via email that Scott Thompson and Peoples Bank told Edwards Place not to negotiate an easement with D.R. Horton until there is an agreement

7
Case 3:18-cv-00456-JRG-HBG   Document 1   Filed 10/19/18   Page 7 of 15   PageID #: 7

about the remainder of the lots on the Subdivision. Scott Thompson and Peoples Bank threatened to start foreclosure against Edwards Place if such agreement was made.

51. D.R. Horton cannot complete or sell residences on the Lots in their present condition.

52. Scott Thompson and Peoples Bank are effectively blocking D.R. Horton from continuing to develop the Lots and mitigating some of its damages.

## COUNT I
## Breach of Contract

53. Any and all averments contained in paragraphs 1 through 52 of the Complaint are incorporated by reference herein as if set out verbatim.

54. D.R. Horton and Edwards Place entered into an enforceable contract for the sale and purchase of lots in the Subdivision.

55. The Lot Purchase Agreement sets out specific development specifications to be met by Edwards Place before selling and transferring the property to D.R. Horton.

56. Edwards Place sold twenty-five (25) lots to D.R. Horton on or around July 18, 2018, that did not have operable sewer or electrical capacity in breach of the Lot Purchase Agreement.

57. Edwards Place's breach was material and to the detriment of D.R. Horton.

58. D.R. Horton is entitled to a judgment against Edwards Place for actual, incidental and consequential damages, in addition to punitive damages and attorneys' fees for Edward Place's oppressive actions.

## COUNT II
## Breach of Implied Covenant of Good Faith and Fair Dealing

59. Any and all averments contained in paragraphs 1 through 58 of the Complaint are incorporated by reference herein as if set out verbatim.

60. D.R. Horton has performed all conditions, covenants and promises required by it in accordance with the terms and conditions of the Lot Purchase Agreement.

61. Edwards Place breached the terms of the Lot Purchase Agreement, and breached its covenant of good faith and fair dealing thereunder, by its willful representations that the twenty-five (25) lots were developed in accordance with the terms of the Lot Purchase Agreement, knowing that the lots did not have operable sewer or electrical capacity and that such constituted a material breach of the Lot Purchase Agreement.

62. D.R. Horton has been compelled to engage counsel to pursue this instant action and thereby is entitled to reasonable attorneys' fees and costs as a direct result of the above-stated breaches of Edwards Place's implied covenant of good faith and fair dealing.

## COUNT III
### Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.

63. Any and all averments contained in paragraphs 1 through 62 of the Complaint are incorporated by reference herein as if set out verbatim.

64. Defendants Edwards Place, David Campbell, MR LLC Trust, Scott Thompson, and Peoples Bank acted in an unfair and deceptive manner affecting the conduct of trade and commerce, constituting unlawful acts or practices.

65. Specifically, Defendants Edwards Place, David Campbell, MR LLC Trust, Scott Thompson, and Peoples Bank represented that the Lots had characteristics that they did not, i.e. that the Lots met the requirements of the Lot Purchase Agreement, in violation of Tenn. Code Ann. § 47-18-104(b)(5).

66. Defendants Edwards Place, David Campbell, MR LLC Trust, Scott Thompson, and Peoples Bank represented that the Lots were of a particular standard, quality or grade that they

were not, i.e. that the Lots had operable sewer and electrical capacity in accordance with the Lot Purchase Agreement, in violation of Tenn. Code Ann. § 47-18-104(b)(7).

67. Defendants Edwards Place, David Campbell, MR LLC Trust, Scott Thompson, and Peoples Bank are jointly and severally liable to D.R. Horton for treble damages and attorneys' fees set forth in Tenn. Code Ann. § 47-18-101, *et seq*.

## COUNT IV
### Interference with Business Relationships

68. Any and all averments contained in paragraphs 1 through 67 of the Complaint are incorporated by reference herein as if set out verbatim.

69. D.R. Horton and Edwards Place had a working business relationship whereby Edwards Place developed raw land and sold groups of developed lots to D.R. Horton.

70. Peoples Bank, in order to be paid on a bad loan, through its loan officer Scott Thompson, knowingly and intentionally interfered with the business relationship by facilitating and encouraging Edwards Place to complete a closing on lots without operable sewer and electrical capacity in breach of the Lot Purchase Agreement.

71. Peoples Bank further continues to interfere with the attempts of D.R. Horton and Edwards Place to negotiate a temporary solution that may mitigate D.R. Horton's damages.

72. D.R. Horton has been damaged by the tortious interference with its business relationship with Edwards Place by People Bank.

## COUNT V
### Procurement of Breach of Contract

73. Any and all averments contained in paragraphs 1 through 72 of the Complaint are incorporated by reference herein as if set out verbatim.

74. D.R. Horton and Edwards Place were parties to a binding Lot Purchase Agreement.

10
Case 3:18-cv-00456-JRG-HBG   Document 1   Filed 10/19/18   Page 10 of 15   PageID #: 10

75. Peoples Bank was aware of the binding Lot Purchase Agreement and, through its loan officer Scott Thompson, played an active role in Edwards Place's development of the raw land in the Subdivision, as well as the relationship with D.R. Horton as a purchaser of the land and Clifton Construction as a third party contractor.

76. Peoples Bank, in order to be paid on a bad loan, through its loan officer Scott Thompson, knowingly and intentionally induced the breach of the Lot Purchase Agreement.

77. Scott Thompson told David Campbell to "keep his mouth shut" about the sewer issues and to let the closing occur even though closing on lots with inoperable sewer and electrical capacity is a breach of the Lot Purchase Agreement.

78. Edwards Place, at the direction of Peoples Bank, breached the Lot Purchase Agreement by selling D.R. Horton the Lots without operable sewer and electrical capacity.

79. Peoples Bank continues to interfere with the attempts of D.R. Horton and Edwards Place to negotiate an easement to mitigate D.R. Horton's damages.

80. D.R. Horton has been damaged by the breach of the Lot Purchase Agreement.

81. Peoples Bank is liable to D.R. Horton for treble damages set forth in Tenn. Code Ann. § 47-50-109.

### COUNT VI
### Negligent and/or Fraudulent Misrepresentation

82. Any and all averments contained in paragraphs 1 through 81 of the Complaint are incorporated by reference herein as if set out verbatim.

83. Defendants, jointly and severally, negligently, intentionally, and/or fraudulently misrepresented and/or induced D.R. Horton to close on the Lots despite the sewer and electric not being operable, in breach of the Lot Purchase Agreement.

84. D.R. Horton detrimentally relied on representations by the Defendants, as well as the terms of the Lot Purchase Agreement, when understanding that at the time of closing the Lots were developed in accordance with the terms of the Lot Purchase Agreement.

85. As a proximate cause of the negligent, intentional, and/or fraudulent misrepresentations and inducements by Defendants, jointly and severally, D.R. Horton has suffered damages and continues to suffer damages.

## COUNT VII
## Order of Priorities

86. Any and all averments contained in paragraphs 1 through 85 of the Complaint are incorporated by reference herein as if set out verbatim.

87. Peoples Bank filed a number of deeds of trust with the Knox County Register of Deeds, encumbering property owned by Edwards Place in the Subdivision at the time a particular deed of trust was filed. Such deeds encumbering property in the Subdivision are as follows:

   a. On June 30, 2015, a deed of trust was recorded with the Knox County Register of Deeds as Instrument No. 201506300072261. Such deed of trust was modified on July, 11, 2016, by Instrument No. 201607110001860 and on July 11, 2017, by Instrument No. 201707110002025.

   b. On September 16, 2016, a deed of trust was recorded with the Knox County Register of Deeds as Instrument No. 201609160017680 and corrected on February 08, 2017, by Instrument No. 201702080048992.

   c. On August 25, 2017, a deed of trust was recorded with the Knox County Register of Deeds as Instrument No. 201708250012769.

   d. On June 18, 2018, a deed of trust was recorded with the Knox County Register of Deeds as Instrument No. 201806180074824.

    e. On June 18, 2018, a deed of trust was recorded with the Knox County Register of Deeds as Instrument No. 201806180074831.

88. On or around, September 15, 2017, Edwards Place filed a Memorandum of Contract with the Knox County Register of Deeds, referencing the Lot Purchase Agreement and providing notice that D.R. Horton held the exclusive right to purchase lots at the Subdivision.

89. At the time of D.R. Horton's recording of the Memorandum of Contract, Peoples Bank had previously recorded three deeds of trust encumbering property in the Subdivision.

90. Peoples Bank, through intentional deceit, fraud, and/or gross negligence, misled D.R. Horton during and before the transfer of the Lots on July 18, 2018.

91. D.R. Horton's Memorandum of Contract should be placed in the first priority position before any deed of trust filed with the Knox County Register of Deeds by Peoples Bank because of its intentional deception.

## COUNT VIII
### Lender Liability

92. Any and all averments contained in paragraphs 1 through 91 of the Complaint are incorporated by reference herein as if set out verbatim.

93. Defendants Peoples Bank and Scott Thompson took control over Edwards Place's development of the Subdivision, including financial and developmental decision-making.

94. Defendants Peoples Bank and Scott Thompson, independent of Edwards Place and its management, requested and accepted bids from third party contractors for the development of the subdivision.

95. Defendants Peoples Bank and Scott Thompson, independent of Edwards Place and its management, directed Clifton Construction to develop the raw land into lots without operable sewer.

96. Defendants Peoples Bank and Scott Thompson, independent of Edwards Place and its management, have attempted to negotiate the sale of the remaining lots in the Subdivision to others, including D.R. Horton and Clifton Construction.

97. Defendants Peoples Bank and Scott Thompson are blocking any attempt by Edwards Place to reach a temporary or permanent resolution that would mitigate the continuing damage to D.R. Horton.

98. Defendants Peoples Bank and Scott Thompson, while exerting excessive control over Edwards Place, are liable for the negligent and/or fraudulent misrepresentation made by Edwards Place.

99. Defendants Peoples Bank and Scott Thompson, while exerting excessive control over Edwards Place, failed to act in good faith.

100. Defendants Peoples Bank and Scott Thompson are liable for the damages caused to D.R. Horton through their acts and the acts of Edwards Place while in excessive control over Edwards Place.

WHEREFORE, D.R. Horton prays as follows:

1. That Defendants be served upon this filing and required to answer;

2. That the terms of the Lot Purchase Agreement be enforced as set forth herein;

3. That D.R. Horton recover damages as set forth herein;

4. That D.R. Horton recover its costs from Defendants including discretionary and court costs and attorneys' fees;

5. That the Court order that D.R. Horton's Memorandum of Contract be placed in a higher priority than any interest Peoples Bank holds in the remaining property in the Subdivision;

6. That the Court grant D.R. Horton any such other equitable and general relief as the Court deems it is entitled to upon a hearing of this cause.

Respectfully submitted this 19th day of October, 2018.

        YOUNG, WILLIAMS & WARD, PC


        *s/ Hugh B. Ward, Jr.*
        HUGH B. WARD, JR. (BPR #015071)
        MINDY L. NOWER (BPR #033468)
        300 Montvue Road
        Knoxville, TN 37919
        Phone: (865) 637-1440